UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| RLR INVESTMENTS, LLC, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 3:19-CV-279 |
| v. ) | |
| ) | Judge Collier |
| CITY OF PIGEON FORGE, TENNESSEE, ) | Magistrate Judge Poplin |
| ) | |
| *Defendant.* ) | |

**M E M O R A N D U M**

Before the Court are a motion to dismiss (Doc. 16) and a supplemental motion to dismiss (Doc. 25) filed by Defendant, the City of Pigeon Forge, Tennessee (the "City"), seeking dismissal of the claims of Plaintiff, RLR Investments, LLC ("RLR"). Plaintiff responded in opposition to each motion (Docs. 22, 29), and Defendant replied (Docs. 23, 30). The Court will **GRANT** Defendant's motion to dismiss (Doc. 16) on the grounds that the Court lacks subject-matter jurisdiction and will **DISMISS** RLR's action **WITHOUT PREJUDICE**.

I.   **BACKGROUND**

Plaintiff owns two neighboring tracts of real property within the boundaries of the City. One tract ("Tract 1" or the "Hotel Property") contains a private resort hotel for the use of RLR's employees, and, until the events at issue here, contained parking spaces for the hotel. The other tract ("Tract 2" or the "Duplex Property") contains a duplex building. Both tracts border the Little Pigeon River. Although the two tracts share a border and are currently under common ownership, they are not unified lots and are not bound to each other in any way.

In 2015, the City undertook the construction of a pedestrian walkway (the "Greenway") along the Little Pigeon River. As part of the Greenway project, in June 2015, the City filed a

petition for condemnation (the "Petition") against RLR in the Circuit Court for Sevier County, Tennessee (the "Circuit Court"). The Petition sought a permanent easement along the river frontage of both tracts for the planned Greenway. The permanent easement on the Hotel Property required the destruction of some or all of the hotel's parking spaces.

In addition to the permanent easements, the Petition sought temporary construction easements on both tracts. The temporary easement on the Duplex Property consisted of 5,210 square feet on which the City intended to construct parking spaces for the hotel to replace the spaces on the Hotel Property the City would destroy for the Greenway.

When the City filed its Petition, federal law did not allow a property owner to bring a federal takings claim in federal court until after a state court had denied the property owner's claim for just compensation. *Knick v. Twp. of Scott, Penn.*, 139 S. Ct. 2162, 2167 (2019) (describing then-current state of federal law on takings proceedings under *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). In a legal Catch-22, however, once a state court did rule on compensation, the state court's decision would generally have preclusive effect in any later federal action. *Id.* (citing *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323 (2005)). A property owner at that time was thus generally limited to whatever remedies could be obtained in state court for a violation of the owner's federal rights.

Having no viable cause of action in federal court at the time, RLR objected to the Petition in the Circuit Court on two grounds. First, RLR objected to the amount of compensation the City was offering. Second, it challenged the City's right to take any part of the Duplex Property to build parking spaces to benefit the Hotel Property. RLR argued such a taking was unconstitutional, in that it was for private, rather than public, use. RLR therefore also sought damages for the injury

2

Case 3:19-cv-00279-CLC-DCP   Document 33   Filed 11/30/20   Page 2 of 15   PageID #: 404

suffered by the Hotel Property in losing its parking places and for the injury suffered by the Duplex Property in having parking spaces built on it to benefit the Hotel Property.

On May 31, 2016, after a hearing, the Circuit Court issued an order (the "Order of Possession") granting the City the right to take the property described in the Petition, including the temporary easement for construction of the replacement parking spaces. The City then took possession of the property identified in the Order of Possession. The matter remained pending in the Circuit Court to value the takings for compensation purposes.

The City completed construction of the part of the Greenway crossing RLR's two tracts in August 2018. It did not, however, construct replacement parking for the Hotel Property on the Duplex Property. RLR characterizes this refusal as the City's effort to avoid RLR's claim for damages related to the impermissible private purpose of the taking.

On May 30, 2018, RLR filed a motion in the Circuit Court to enforce the terms of the Order of Possession. RLR argued that under Tennessee Law, once an order of possession is entered, a government cannot "give back" any part of the condemned property. RLR argued the City must, instead, dismiss its original Petition and file a new petition seeking condemnation only of the property necessary for the public purpose of the Greenway. At a hearing on the motion, counsel for the City admitted, "[t]his is parking on private land that does not benefit the public purpose of the Greenway." (Doc. 1 ¶ 26.) In September 2018, the Circuit Court issued an order finding that the construction of parking for the Hotel Property on the Duplex Property was not for a public purpose. The Circuit Court held, however, that the City was not required to build the replacement parking, and that the City's failure to build the parking was not an abandonment of the project.

On March 4, 2019, RLR filed a motion for summary judgment in the Circuit Court. RLR argued the City's admission and the Circuit Court's finding that part of the taking was not for a

3

public purpose was a fatal flaw requiring dismissal of the Petition. The City's response to the motion for summary judgment again admitted the proposed parking spaces on the Duplex Property did not benefit the Greenway's public purpose. At the hearing on the motion on June 17, 2019, the Circuit Court also again acknowledged the parking spaces were not for a public purpose, but declined to dismiss the Petition and stated it would let the valuation proceedings continue.

On June 21, 2019, four days after the Circuit Court's hearing on RLR's motion for summary judgment, the Supreme Court of the United States issued its decision in *Knick*, 139 S. Ct. 2162. The Supreme Court overruled the state-litigation requirement of *Williamson County*, holding that "[a] property owner may bring a takings claim [in federal court] under [42 U.S.C.] § 1983 upon the taking of his property without just compensation by a local government." *Id.* at 2179.

Citing *Knick*, RLR filed its current federal action on July 17, 2019. (Doc. 1 (the "Complaint") ¶ 6.) Count One of the Complaint asserts a claim for unlawful taking under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶¶ 36–41.) Count Two of the Complaint[1] seeks a declaratory judgment that the City "may not take RLR's land without a proper public purpose pursuant to any legal authority" and may not abandon the improper part of its taking just to avoid paying RLR just compensation for the improper taking. (*Id.* ¶¶ 42–46.) The prayer for relief requests, among other remedies: a declaration that the Order of Possession is unconstitutional in that the City took RLR's property without a proper public purpose; an injunction against the City preventing the City from "exercising any ownership rights in RLR's property pursuant to the Order of Possession and from enforcing the Order of

---

[1] The Complaint asserts two causes of action. (Doc. 1 at 9–11.) The second cause of action is labeled "Count Three." (*Id.* at 10.) For the sake of simplicity, the Court refers to the second count as "Count Two."

4

Possession"; and an injunction requiring the City to file a new petition for condemnation limited takings which have a proper public purpose. (*Id.* at 11.)

On September 16, 2019, the City moved to dismiss the Complaint. (Doc. 16.) The City argues the Court lacks subject-matter jurisdiction over RLR's claims under the *Rooker-Feldman* doctrine. (*Id.*) In the alternative, the City argues the Court should abstain and dismiss the action under the *Colorado River* doctrine. (*Id.*) RLR responded in opposition (Doc. 22), and the City replied (Doc. 23). On the same day it filed its reply, the City filed a supplemental motion to dismiss, adding the *Younger* doctrine as an additional reason for abstention. (Doc. 25.) RLR responded in opposition (Doc. 29), and the City replied (Doc. 30).

## II. STANDARD OF REVIEW

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Although the parties do not expressly address whether the City's motion is a facial or factual attack, the City does not introduce any evidence, and the parties' arguments focus on the language of the complaint. The parties therefore appear to treat the motion as a facial attack. "When reviewing a facial attack, a district court takes the allegations in the complaint as true," although conclusory allegations and legal conclusions will not prevent dismissal. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

## III.    DISCUSSION

The *Rooker-Feldman* doctrine precludes lower federal courts from conducting appellate review of state-court proceedings because 28 U.S.C. § 1257 grants the Supreme Court sole jurisdiction to review state-court judgments. *See Berry v. Schmitt*, 688 F.3d 290, 298–99 (6th Cir. 2012). The doctrine arises from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court agreed with a federal court's decision to decline to exercise jurisdiction over a petition requesting a state-court judgment be declared null and void. 263 U.S. at 414–15. The Supreme Court explained:

> [I]t was the province and duty of the state courts to decide [the constitutional questions]; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.
> . . .
> [N]o court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character.

*Id.* at 415–16. In *Feldman*, a district court had declined to review a state court's decision on bar-admission matters. 460 U.S. at 463. The Supreme Court agreed with the district court's interpretation of its jurisdictional reach, finding "the United States District Court is without authority to review final determinations of the District of Columbia Court of Appeals in judicial proceedings." *See id.* at 476.

Together, *Rooker* and *Feldman* stand for the proposition that federal district courts cannot review claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) ("A United States district court 'has no authority to review final judgments

6

of a state court in judicial proceedings.' . . . This is true, even though the state court judgment may have been erroneous.") (quoting *Feldman*, 460 U.S. at 482, and citing *Texaco, Inc. v. Pennzoil Co.*, 784 F.2s 1133, 1142 (2d Cir. 1986)). To determine whether the *Rooker-Feldman* doctrine applies, a court must look to "the source of the injury" alleged. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

RLR argues the *Rooker-Feldman* doctrine does not bar this action for three reasons. First, RLR argues the doctrine does not apply to interlocutory state-court orders. Second, it argues the doctrine does not apply here because RLR's federal claim was not raised or resolved in the Circuit Court. Third, RLR argues the source of its injuries is not any of orders of the Circuit Court, but rather the City's actions.

### A. Applicability of the *Rooker-Feldman* Doctrine to Interlocutory Orders

The first question before the Court is whether the *Rooker-Feldman* doctrine applies to interlocutory orders, like the Order of Possession, or only to final judgment orders. The City argues the doctrine applies to interlocutory orders, relying on *Pieper v. American Arbitration Ass'n, Inc.*, 336 F.3d 458 (6th Cir. 2003). (Doc. 17 at 5; Doc. 23 at 3–9.) RLR contends *Pieper* is no longer good law. (Doc. 22 at 6–8.)

In *Pieper*, the Court of Appeals for the Sixth Circuit engaged in a thorough analysis and joined the majority of circuits in holding that the *Rooker-Feldman* doctrine applies to interlocutory orders and orders of lower state courts. *Pieper*, 336 F.3d at 462. But RLR argues *Pieper* is no longer good law following the Supreme Court's decision in *Exxon*, 544 U.S. 280. In *Exxon*, the

7

Supreme Court noted that the *Rooker-Feldman* doctrine "has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," and confined the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 283–84. RLR characterizes *Exxon* as holding that applying the *Rooker-Feldman* doctrine to interlocutory state-court orders is an improper extension of the doctrine. (Doc. 22 at 6–7.)

RLR overreads *Exxon*. The issue in *Exxon* was not whether a state-court order had to be final for the *Rooker-Feldman* doctrine to apply; it was at what point in the lifecycle of a federal case the *Rooker-Feldman* doctrine comes into play. In *Exxon*, Exxon Mobil Corporation and related entities (collectively, "Exxon") filed a parallel action in federal court in July 2000, two weeks after Saudi Basic Industries Corporation ("SABIC") had filed an action against Exxon in state court. 544 U.S. at 289. The state court entered judgment for Exxon after a March 2003 trial. *Id.* Meanwhile, SABIC had moved to dismiss the federal suit on various grounds, lost the motion, and was allowed to file an interlocutory appeal of the denial of that motion. *Id.* at 289–90. Oral argument on the federal appeal took place in December 2003, eight months after the verdict in the state court. *Id.* at 290. The Court of Appeals for the Third Circuit raised the *Rooker-Feldman* doctrine on its own, and held that even though jurisdiction had been proper when the federal suit was first filed, jurisdiction ceased to exist when the state court reached a judgment before the federal court did. *Id.*

The Supreme Court reversed. *Id.* at 284. It held that "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. The Supreme Court reiterated previous holdings that a pending action in state court

8

does not bar proceedings in federal court on the same matter. *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1975)). It acknowledged that doctrines of comity or abstention may sometimes permit or require a stay or dismissal of the federal action in favor of the state action, but clarified that "neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* In other words, "federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Id.* at 293. Thus, despite the Supreme Court's use of the word "judgment" in characterizing its holding elsewhere in the opinion *Exxon* does not undermine *Pieper*, because an interlocutory order was not at issue in *Exxon*.

RLR nevertheless points to two cases from the Court of Appeals for the Sixth Circuit to attempt to show the Sixth Circuit "discarded *Pieper* and abandoned application of *Rooker-Feldman* to interlocutory orders of a state court" after *Exxon* was issued. (Doc. 22 at 7.)

In *Gilbert v. Ferry*, 401 F.3d 411 (6th Cir. 2005) ("*Gilbert I*"), the Court of Appeals initially affirmed the application of the *Rooker-Feldman* doctrine where the federal action sought to force the recusal of state-court justices from a pending state-court appeal, and where the federal action was initiated five months after the state motion for recusal was filed but two weeks before the state court issued an order denying the motion. *Id.* at 414–15. The Court of Appeals rejected the plaintiffs' argument "that the *Rooker-Feldman* doctrine does not apply to divest the district court of subject matter jurisdiction . . . because at the time [the plaintiffs] filed their complaint . . . there had been no state judgment or order, and thus nothing that the *Rooker-Feldman* doctrine prohibited the district court from reviewing." *Id.* at 417. *Gilbert I* mentioned *Pieper* and the interlocutory nature of the state-court order only in a footnote, and neither played a role in the ruling. *Id.* at 417 n.5. *Exxon* was issued a few weeks later, taking the exact position the Court of Appeals had

9

rejected in *Gilbert I*—that if subject-matter jurisdiction is proper at the start of a federal case, *Rooker-Feldman* does not later spring up to strip the court of jurisdiction. *See Exxon*, 544 U.S. 280. The Court of Appeals consequently vacated the part of *Gilbert I* that discussed the *Rooker-Feldman* doctrine and affirmed dismissal of the case on other grounds. *Gilbert v. Ferry*, 413 F.3d 578 (6th Cir. 2005) ("*Gilbert II*"). *Gilbert II* thus only shows the Court of Appeals rejected the reasoning in *Gilbert I*; it does nothing to show the Court of Appeals has rejected *Pieper*.

Nor does the other Sixth Circuit case on which RLR relies, *Shafizadah v. Bowles*, 476 F. App'x 71 (6th Cir. 2012), involve an interlocutory order or demonstrate a rejection of *Pieper*. In *Shafizadah*, an ex-husband sued the state-court judge who had presided over his divorce case, seeking an injunction forcing the state-court judge to recuse from further proceedings, a declaration that the state court's practice of allowing law clerks to grant emergency protective orders was unconstitutional, and a declaration that the judge's practice of ruling on motions without a response from the opposing party violated due process. *Id.* at 72. The district court dismissed the complaint, based in part on the *Rooker-Feldman* doctrine. *Id.*

The Court of Appeals affirmed the dismissal on different grounds. It reiterated *Exxon*'s emphasis that the *Rooker-Feldman* doctrine is "confined to cases" in which "the plaintiffs 'filed suit in federal court after the *state proceedings ended*.'" *Id.* (quoting *Exxon*, 544 U.S. at 291). It further stated that, after *Exxon*, "it remains an open question in this circuit whether *Rooker-Feldman* applies where, as here, the plaintiff files suit while the state case is still pending on appeal." *Id.* (citing *Marciano v. White*, 431 F. App'x 611, 613 (9th Cir. 2011) (doctrine applies after state judgment but before appeals are completed), and *Nicholson v. Shafe*, 558 F.3d 1266, 1278–79 (11th Cir. 2009) (doctrine does not apply until all state appeals are completed)). But in *Shefizadah*, the Court of Appeals did not decide the applicability of *Rooker-Feldman* to a state

10

case on appeal. Rather, it held *Rooker-Feldman* did not apply because the ex-husband's requests for relief were forward-looking challenges to the constitutionality of state-court rules, not challenges to the judgment against him. *Id.* Thus, *Shefizadah*, like *Exxon*, contains only dicta regarding the significance of the finality of a state-court order in a *Rooker-Feldman* analysis. *Shefizadah* also, like *Gilbert*, does not show the Sixth Circuit has abandoned *Pieper* following *Exxon*.

RLR's last argument against *Pieper* is its assertion that, "[s]ince the Sixth Circuit's decision in *Gilbert II*, district courts within the Sixth Circuit have consistently declined to apply *Rooker-Feldman* to interlocutory state court orders." (Doc. 22 at 7.) RLR provides citations to two district-court decisions that declined to follow *Pieper* or declined to apply *Rooker-Feldman* to a state-court judgment on appeal. (*Id.* at 7–8.) RLR also notes and distinguishes one district-court decision that followed *Pieper*. (*Id.* at 8 n.5.) The City, in reply, cites close to ten district-court cases within the Sixth Circuit that have followed or favorably cited *Pieper* since *Gilbert II* and *Exxon*. (Doc. 23 at 3–4.) None of the district-court opinions cited by the parties is binding in this case, of course. The cases cited by the parties do not show, however, a consistent rejection of *Pieper* by district courts in this Circuit.

The Court concludes the interlocutory nature of the Circuit Court orders at issue does not prevent the application of the *Rooker-Feldman* doctrine in this case.

### B. Federal Cause of Action Not Raised in State Case

RLR relies on a single case to argue the *Rooker-Feldman* doctrine does not bar this suit because RLR asserts a claim under § 1983 in this action, but it did not assert a § 1983 claim in state court. (Doc. 22 at 9 (citing *William Penn Apartments v. D.C. Ct. App.*, 39 F. Supp. 3d 11, 17–18 (D.D.C. 2014)).) In addition to being a district-court decision from a different circuit,

11

*William Penn* did not refuse to apply the *Rooker-Feldman* doctrine because of a difference between the federal and state causes of action, as RLR implies; it declined to apply *Rooker-Feldman* because it concluded that, after *Exxon*, the doctrine did not apply to interlocutory orders. *William Penn*, 39 F. Supp. 3d at 18–19. This Court respectfully disagrees about the import of *Exxon*, as previously discussed. In any case, the *Rooker-Feldman* doctrine does not require an identity of the causes of action between the state and federal actions, but an examination of whether the state-court order is the source of the injury of which the federal plaintiff is complaining. *See Exxon*, 544 U.S. at 284; *see also McCormick*, 451 F.3d at 393. RLR's second argument therefore fails.

### C. The Source of RLR's Injury

As stated above, the source of a federal plaintiff's injuries is the central inquiry in determining if the *Rooker-Feldman* doctrine applies. *See McCormick*, 451 F.3d at 393. RLR's third argument against applying the *Rooker-Feldman* doctrine is that RLR's injuries flow from the City's actions in taking RLR's property without a proper public purpose, not the Circuit Court's orders. (Doc. 22 at 6, 9–11.) To this end, RLR argues it "is not seeking review of the state court's actions." (*Id.* at 9.)

As the City points out, it is clear from the Complaint that RLR is asking this Court to review and overturn an order of the Circuit Court. The first item of relief RLR seeks is "[a] judgment declaring that the Order of Possession is unconstitutional." (Doc. 1 at 11.) This request is a direct attack on the Circuit Court's Order of Possession. RLR continues with a request for a declaration "that the City took RLR's private property without a proper public purpose." (*Id.*) Although this declaration would be directed to the City, it concerns an action the City was able to take only based on the Order of Possession. (*Id.* ¶ 20 ("The City took possession of the RLR properties pursuant to the Order of Possession . . . .").) RLR's third request for relief asks the Court to enjoin the City

12

"from exercising any ownership rights in RLR's property pursuant to the Order of Possession and from enforcing the Order of Possession." (*Id.* at 11.) Such an injunction can only be granted if the Court reviews the Order of Possession and finds it to be improper. Similarly, RLR's request for an injunction requiring the City to file a new petition for condemnation limited to takings which have a proper public purpose (*id.*), while nominally directed to the City, would only be necessary and possible if the Order of Possession were first invalidated by the Court.

RLR argues that the City's quotations from the prayer for relief are selective and do not accurately reflect the Complaint as a whole. (Doc. 22 at 11.) But RLR's two causes of action necessarily ask the Court to review and invalidate the Order of Possession to protect RLR from the harm caused by the Order of Possession. Count One, under § 1983, asserts:

> RLR is entitled to a declaration declaring the Petition for Condemnation unconstitutional and invalid, enjoining the City from enforcing any property rights granted in the Order of Possession; and requiring the City to refile a petition for condemnation to take only that portion of RLR's property for which there is a proper public purpose.

(Doc. 1 ¶ 40.) Again, none of these actions is possible or necessary unless the Court reviews and invalidates the Order of Possession. Count Two, seeking a declaratory judgment, complains of the City's "position that it may enforce an unconstitutional Order of Possession, take possession of RLR's land . . . and then unilaterally abandon the unlawful portion of the taking." (*Id.* ¶ 44.)

RLR argues *Rooker-Feldman* is not implicated where there is a separate source of injury, even if vindication of the claims might lead the Court to disagree with the decisions of the Circuit Court. (Doc. 22 at 10.) In *Sturgis v. Hayes*, 283 F. App'x 309, 310 (6th Cir. 2008), for example, the plaintiff parents brought suit in federal court after their children were removed from their home. A later state-court judgment terminated the plaintiffs' parental rights. *Id.* The Court of Appeals held the *Rooker-Feldman* doctrine did not apply because the federal suit was not attacking the

13

judgment terminating parental rights, but rather the earlier removal of the children from the plaintiffs' custody. *Id.* at 313–14. The Court of Appeals acknowledged it was possible the federal court would disagree with the findings of the state court that had terminated the parents' rights. *Id.* Nevertheless, granting the parents the relief they were seeking in federal court against the persons who had removed the children from the home would not have required a reversal of the state-court order on parental rights. *See id.* Here, by contrast, while the City initiated the process to obtain the Order of Possession, it was the Order of Possession which caused the loss or property rights and damages RLR is seeking to remedy.

RLR relies also on *McCormick*, 451 F.3d 382, and the distinctions the Court of Appeals for the Sixth Circuit drew in that case are instructive here. In *McCormick*, the Court of Appeals held the *Rooker-Feldman* doctrine did not apply to causes of action for fraud, abuse of process, or the unconstitutionality of a state statute, because those causes of action did not allege harm from resulting state-court judgments, even if the federal court might disagree with some of the state court's conclusions. *Id.* at 392. The Court of Appeals also held, however, that the *Rooker-Feldman* doctrine did apply to certain other causes of action, when those claims alleged state orders were unconstitutional. *Id.* at 395. As the Court of Appeals explained, "if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *Id.* at 394. That is precisely the case here. Both counts asserted by RLR seek to invalidate the Order of Possession and remedy the harm allegedly done to RLR by the past and future enforcement of the Order of Possession. Under the *Rooker-Feldman* doctrine, the Court does not have subject-matter jurisdiction over RLR's causes of action.

Before concluding, the Court pauses to consider the significance of the Supreme Court's decision in *Knick*, 139 S. Ct. 2162. RLR argues *Knick* gives "property owners like RLR . . . an

14

immediate right to seek redress for Fifth Amendment violations in federal court against local governments, *regardless of the status of state court proceedings*." (Doc. 22 at 1 (emphasis added).) RLR characterizes the City's motion as merely an attempt to circumvent *Knick*. (*Id.* at 2.) While *Knick* indeed removed the state-litigation requirement of *Williamson County* and gave plaintiffs the right to bring a takings claims immediately upon the taking, it did not overrule *Rooker* or *Feldman*, nor did it guarantee a federal forum "regardless of the status of state court proceedings.". (*See* Doc. 22 at 1.) The timing of *Knick* for RLR is unfortunate, as it is for the other property owners whose property was taken after *Williamson County* but before *Knick*. If *Knick* had been issued before the Order of Possession—or if RLR had filed an earlier action in federal court, in an effort to challenge *Williamson County*—the *Rooker-Feldman* doctrine would not bar RLR's action. This may be a bitter pill for RLR to swallow, but that bitterness does not allow the Court to hear a case outside of its subject-matter jurisdiction.

## IV. CONCLUSION

The Court will **GRANT** Defendant's motion to dismiss (Doc. 16) and **DENY** Defendant's supplemental motion to dismiss (Doc. 25). The Court will **DISMISS** Plaintiff's action **WITHOUT PREJUDICE**.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**